UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

```
_____
                                )
SUMMER INFANT, INC.,            )
                                )
        Plaintiff,              )
                                )
        v.                      )    C.A. No. 15-218 S
                                )
CAROL E. BRAMSON, et al.,       )
                                )
        Defendants.             )
_____)
```

### MEMORANDUM AND ORDER

WILLIAM E. SMITH, Chief Judge.

Before the Court are Defendant Kenneth Price's Motion to Dismiss ("Price's Motion") (ECF No. 41) and Plaintiff's Motion to Dismiss Carol E. Bramson and Annamaria Dooley's Counterclaims ("Summer's Motion") (ECF No. 64). After careful consideration, Price's Motion is DENIED, and Summer's Motion is GRANTED IN PART and DENIED IN PART, for the reasons that follow.

I.  Background

Plaintiff, Summer Infant, Inc. ("Summer"), a company that designs and sells baby products, is suing several of its former employees for a number of violations, including breach of contract, misappropriation of trade secrets, tortious interference with business relations, computer theft, and civil conspiracy. In short, Summer alleges that the defendants – Kenneth Price (former President of Global Sales and Marketing), Carol Bramson (former President and CEO), and Annamaria Dooley (former Senior Vice

President of Product Development) – colluded to steal Summer's trade secrets and leave Summer to form a competing start-up.

The alleged conspiracy started after Summer entered into a Consulting Agreement with Rest Devices, Inc. ("Rest") in February 2015.  Under the Consulting Agreement, Rest agreed to assist Summer in developing a new product.  After making a confidential presentation on Rest's work to Summer's Board of Directors, Bramson, along with Dooley and Price, resigned.  Around the same time, Rest informed Summer that it would not consent to an additional term of their Consulting Agreement.

Shortly after their resignations, Bramson and Dooley created a slide deck containing information related to the new product (the "Startup Deck").  Summer alleges that the Startup Deck is an investors' pitch for a new, competing venture, and that it is comprised almost exclusively of confidential and proprietary information belonging to Summer that was wrongfully taken without Summer's knowledge or permission.  Among the slides in the Startup Deck is one that lists employees of the alleged new company, including biographies that can be tied to Bramson, Dooley, and Price.  Dooley emailed the Startup Deck to Bramson, stating, among other things, "[i]n my head I hear [Rest employee] Dulcie [Madden]'s voice - 'there's a crapton of information'"; and "I spoke with Ken [Price] at length and am excited about the possibilities."  (Compl. ¶ 95, ECF No. 1.)

2

Bramson and Dooley tell a starkly different tale in their counterclaims. According to them, Summer – having failed to put into place a non-compete agreement when they resigned - resorted to a frivolous lawsuit to ruin their reputations and prevent them from lawfully working with other companies, including Rest.

II.  Price's Motion

At this stage, the Court must "accept the well-pleaded facts as true" and "view[] factual allegations in the light most favorable to the plaintiff." Rederford v. U.S. Airways, Inc., 589 F.3d 30, 35 (1st Cir. 2009). "To adequately plead civil conspiracy, a plaintiff must allege that '(1) there was an agreement between two or more parties and (2) the purpose of the agreement was to accomplish an unlawful objective or to accomplish a lawful objective by unlawful means.'" W. Reserve Life Assur. Co. of Ohio v. Caramadre, 847 F. Supp. 2d 329, 347 (D.R.I. 2012), aff'd sub nom. W. Reserve Life Assur. Co. of Ohio v. ADM Assocs., LLC, 793 F.3d 168 (1st Cir. 2015) (quoting Smith v. O'Connell, 997 F. Supp. 226, 241 (D.R.I. 1998)).

Price's argument concerning all the counts asserted against him is largely the same: Summer has not alleged sufficient facts to show his involvement in Dooley and Bramson's purported scheme. Price argues:

> The bare facts that Dooley authored an email to Bramson
> attaching the Startup Deck, referenced "Ken" in such
> email, and that the creator of the Startup Deck
> apparently included Price on a roster of prospective

> "team" members does not provide a legal basis for
> liability of Price for misappropriating any information
> of Summer.   Nothing in Summer's comprehensive factual
> recitation surrounding the various presentations and
> product development efforts undergone in connection with
> the subject new product offering demonstrates or even
> suggests that Price had any involvement in that process.

(Price's Mot. 7, ECF No. 41-1.)  With respect to Counts XI-XIII

(Computer Theft; Computer Trespass; Access to Computer for

Fraudulent Purpose; and Intentional Access, Alteration, Damage or

Destruction) (collectively, the "computer theft counts"), Price

asserts that these claims are particularly tenuous, as they

"represent nothing more than a conclusory leap that because Price

had access to Summer information, and Summer has advanced a theory

that he acted in concert with the other Defendants, he must have

abused that access and engaged in illegal conduct through Summer's

computers."  (Id. at 18.)

Summer responds that it has alleged a conspiracy and "[a]t

this pleading stage, those allegations 'go into enough detail about

the alleged conspiracy' to state claims against Price." (Summer's

Opp'n to Price's Mot. 3, ECF No. 59-1 (quoting W. Reserve Life

Assur. Co. of Ohio v. Conreal LLC ("Conreal"), 715 F. Supp. 2d

270, 282-83 (D.R.I. 2010)).)  Summer further argues that "this is

precisely the type of case where additional information concerning

the nature and extent of the conspiracy, and the facts concerning

the conspirators' specific roles and actions, are in the possession

of the Defendants."  (Id.)  Finally, Summer requests that, should

4

the Court find the Complaint deficient, it be granted leave to amend, citing new information tying Price to the conspiracy that it has uncovered since the filing of the Complaint. (<u>Id.</u> at 49-50.)

The Court agrees with Summer that it has alleged sufficient facts against Price to satisfy the pleading standard. Taking the facts alleged in the Complaint as true and in the light most favorable to Summer - including the email allegedly referencing Price and the inclusion of his biography as the head of "Sales Leadership" in the Startup Deck - the claim that Price formed an agreement with Bramson and Dooley to use Summer's trade-secret information to form their own competing business is "plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). Accordingly, the Court finds that Summer states a claim for misappropriation of trade secrets, misappropriation of confidential information (unfair competition),[1] breach of fiduciary duty, conversion, breach of contract, tortious interference with contracts, tortious interference with prospective business relations, and unjust enrichment. Regarding

---

[1] Summer pleaded "misappropriation of confidential information," but indicated to the Court at oral argument that this allegation refers to the tort of unfair competition. <u>See</u> <u>Baris v. Steinlage</u>, No. C.A. 99-1302, 2003 WL 23195568, at *21 (R.I. Dec. 12, 2003) ("Misuse of an employer's confidential information by an employee or former employee constitutes unfair competition." (citing <u>Abbey Med./Abbey Rents, Inc. v. Mignacca</u>, 471 A.2d 189, 193 (R.I. 1984)).

the computer theft counts, the Court agrees with Price that there are no facts in the current Complaint that show he was <u>personally</u> involved in compiling information from the computers.  However, based on the civil conspiracy theory, it is nonetheless plausible that he <u>agreed</u> to Bramson and Dooley's plan to create the Startup Deck; thus, Summer need not prove he committed those actions himself.  <u>See</u> <u>Conreal</u>, 715 F. Supp. 2d at 282-83 ("[P]articipants in a civil conspiracy need not know everything their coconspirators know, or participate in every wrongful act, to be found liable for the ultimate fraud.").  Accordingly, Price's motion to dismiss is denied.

III. Summer's Motion

     The crux of Bramson and Dooley's counterclaims is that "Summer lodged the various allegations in its Complaint against them intentionally and without basis in order to interfere with their ability to engage in other business and employment opportunities." (Bramson and Dooley's Opp'n 7, ECF No. 120.)  Consequently, Bramson and Dooley bring counterclaims for tortious interference with prospective business relations, violations of Massachusetts Chapter 93A, and abuse of process.

     A.   Tortious  Interference  with  Prospective  Business
          Relations

     Summer makes two arguments why Bramson and Dooley's allegations are insufficient to support a claim for tortious interference with prospective business relations: "(1) Bramson and

6

Dooley have failed to allege any specific contract or business opportunities, or even their nature, that Summer knowingly interfered with (a necessary prerequisite to pleading a tortious interference claim), and (2) Summer is legally privileged to bring its lawsuit against Bramson and Dooley." (Summer's Mot. 6, ECF No. 64-1.)

With respect to the first argument, as Bramson and Dooley explain in their Opposition, "the allegations [] identify one prospective business relationship by name — Rest." (Bramson and Dooley's Opp'n to Summer's Mot. 8, ECF No. 117.) Taking Bramson and Dooley's pleadings as true, as the Court must, Summer knew it could not contractually prevent Bramson and Dooley from working with Rest, and filed this lawsuit in an attempt to thwart them.[2]

Regarding Summer's second argument — that it has an "absolute privilege" to file its lawsuit — Bramson and Dooley correctly note

---

[2] Moreover, the cases Summer cites in support of this argument are factually distinguishable. See Burke v. Gregg, 55 A.3d 212 (R.I. 2012); PSW, Inc. v. Visa U.S.A., Inc., No. C.A. 04-347T, 2006 WL 519670 (D.R.I. Feb. 28, 2006). In Burke, a radio host was sued for allegedly making defamatory remarks about Burke that interfered with his business; however, the plaintiffs failed to allege that this was an "intentional act[]" to interfere with their business relations. 55 A.3d at 222. Likewise in PSW, the Court noted that "[t]he allegations are not entirely clear" and the plaintiff did not "sufficiently identif[y] the prospective "economic advantage" with which it allege[d] that Defendants interfered." 2006 WL 519670 at *17. Here, by contrast, Bramson and Dooley allege that Summer deliberately filed a frivolous lawsuit to interfere with their business relationship with Rest and other potential clients.

that the privilege is not as absolute as Summer claims.   The Restatement (Second) of Torts provides that there is no liability for interference with contract or prospective business relations where the alleged damage was caused by "asserting in good faith a legally protected interest."   Restatement (Second) of Torts § 773 (1979).   However,

> [t]he rule stated in this Section gives to the actor a defense for his legally protected interest.   It is of narrow scope and protects the actor only when (1) he has a legally protected interest, and (2) in good faith asserts or threatens to protect it, and (3) the threat is to protect it by appropriate means.   Under these circumstances his interference is not improper.

Id. cmt. a; see also Belliveau Bldg. Corp. v. O'Coin, 763 A.2d 622, 629 (R.I. 2000) ("The Restatement [(Second) of Torts § 773] also recognizes a conditional defense to a tortious interference-with-contract action; namely, asserting a 'bona fide claim.'    . . . This privilege, however, is a conditional one; the opposing party still may prevail upon a showing of 'actual malice' on the part of the party recording such a notice.").   Taking Bramson and Dooley's allegations as true, Summer did not have a "legally protected interest" and did not act "in good faith."

B.   Violations of Massachusetts Chapter 93A

In order to bring an action under Massachusetts Chapter 93A, a plaintiff must plead facts showing that "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within [Massachusetts]." Kuwaiti Danish Comput. Co.

8

v. Digital Equip. Corp., 781 N.E. 2d 787, 799 (Mass. 2003).  Summer
argues that Bramson and Dooley do not plead any specific facts
beyond their conclusory statement that "Summer's conduct occurred
primarily and substantially in the Commonwealth of Massachusetts."
(Counterclaim ¶ 120, ECF No. 45-1; see Summer's Mot. 13, ECF No.
64-1.)   In particular, Summer notes that the main action Bramson
and Dooley challenge is the filing of the lawsuit, which
undisputedly took place in Rhode Island.  (See Summer's Mot. 13,
ECF No. 64-1.)   It also points out that this Court recently
dismissed a 93A claim where the complaint "[did] not suggest that
the 'center of gravity' of underlying facts took place in
Massachusetts." (Id. at 12 (quoting Alex & Ani, LLC v. Elite Level
Consulting, LLC, 31 F. Supp. 3d 365, 372 (D.R.I. 2014)).)

    Bramson and Dooley respond that because they have pled that
Bramson, Dooley, and Rest are all located in Massachusetts, and
that the harm (including interference with their ability to do
business with Rest, a Massachusetts company) occurred in
Massachusetts, that is sufficient.   See Guest-Tek Interactive
Entm't Inc. v. Pullen, 731 F. Supp. 2d 80, 92 (D. Mass. 2010)
(denying motion to dismiss 93A claim where "both [counterclaim
plaintiffs] are primarily located in Massachusetts" and "the harm
that has been alleged (restriction of their business activities)
manifests itself at their principal place of business in
Massachusetts"); Back Bay Farm, LLC. v. Collucio, 230 F. Supp. 2d

176, 188 (D. Mass. 2002) ("[A] section eleven cause of action, attacked via a motion to dismiss, should survive a 'primarily and substantially' challenge so long as the complaint alleges that the plaintiff is located, and claims an injury, in Massachusetts.").

The Court agrees with Bramson and Dooley that they have sufficiently pled their 93A claim. The case law is clear that if the plaintiffs and the harm are both located in Massachusetts, that is enough to survive a motion to dismiss. In Alex & Ani, the plaintiffs did not meet this threshold. See 31 F. Supp. 3d at 372 (noting that the complaint "merely suggest[ed] that BJ's sold Alex and Ani merchandise at locations in Massachusetts and that Julie Weiss instructed Alex and Ani to ship the merchandise to a distribution company in East Boston").

Summer further argues that Bramson and Dooley's employment contracts are governed by Rhode Island, not Massachusetts, law, and therefore 93A does not apply; or even if Massachusetts law did apply to their contracts, 93A does not cover disputes arising out of employment contracts. These arguments do not fare any better. Where, as here, the allegations go beyond a breach of contract – namely, that Summer did not have an enforceable non-compete binding Bramson and Dooley, and instead resorted to a frivolous lawsuit to prevent them from pursuing valid business opportunities – a 93A claim can stand. See, e.g., Bradley v. Dean Witter Realty, Inc., 967 F. Supp. 19, 29 (D. Mass. 1997) (allowing 93A claim where the

plaintiff's "assertion that the defendant subsequently persuaded him to lower his regular rates with the lure of an incentive fee, and that it subsequently refused to pay him the promised fee because the hotel was so profitable, may support a claim for unfair business practices that is separate from the alleged contract breach and that is indicative of the requisite 'rascality'"); Jacobson v. Mailboxes Etc. U.S.A., Inc., 646 N.E. 2d 741, 745 (Mass. 1995) (denying motion for summary judgment on 93A claim where "forum selection clause by its terms relates only to actions to enforce the agreement and not to actions based on unlawful conduct that induced a franchisee to sign the agreement" (emphasis in original)).

To be sure, to prevail on their 93A claim, Bramson and Dooley will eventually have to show that "the center of gravity of the circumstances that give rise to the claim is primarily and substantially within the Commonwealth." Alex & Ani, 31 F. Supp. 3d at 372 (quoting Kuwaiti, 781 N.E. 2d at 799). However, the allegations that they both live in Massachusetts and the harm occurred there are sufficient at the motion to dismiss stage.

C.   Abuse of Process

The torts of abuse of process and malicious prosecution are both recognized, but disfavored, under Rhode Island law. Vigeant v. United States, 462 F. Supp. 2d 221, 231 (D.R.I. 2006), aff'd, 245 F. App'x 23 (1st Cir. 2007). "[A]buse of process, as

11

distinguished from malicious prosecution, 'arises when a legal proceeding, although set in motion in proper form, becomes perverted to accomplish an ulterior or a wrongful purpose for which it was not designed.'"  Id. (quoting Butera v. Boucher, 798 A.2d 340, 353 (R.I. 2002)).  Here, Summer argues that "[b]ecause Bramson and Dooley have specifically alleged that this lawsuit was not 'originally instituted in good faith,' no cause of action for abuse of process can lie."  (Summer's Mot. 18–19, ECF No. 64-1 (quoting Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 908 (R.I. 2002)).)  Summer contends that the more proper tort would have been malicious prosecution, but that cannot be filed until the legal proceeding has been terminated. Id. at 19.  Bramson and Dooley retort that:

> The focus of an abuse of process claim is not the point in the suit or process at which the abuse occurs, but rather the fact that the suit is used for an improper purpose or for an improper motive. Whether the motive or purpose existed from the beginning of the action or surfaced later is irrelevant.

(Bramson and Dooley's Opp'n 23, ECF No. 117-1.)

Summer has the better argument.  The law is clear that the distinction between an abuse of process and malicious prosecution claim is whether or not the lawsuit has a legitimate basis: "if the defendant prosecutes an innocent plaintiff for a crime without reasonable grounds to believe him guilty, it is malicious prosecution; if he prosecutes him with such [reasonable] grounds [but his ulterior motive is] to extort payment of a debt, it is abuse of process."  Vigeant, 462 F. Supp. 2d at 231 (quoting

Hillside Assocs. v. Stravato, 642 A.2d 664, 667 (R.I. 1994)); see also Toste Farm, 798 A.2d at 908 (dismissing abuse of process claim where the plaintiff "failed to allege that the suits were originally instituted in good faith, but then became perverted for some ulterior purpose" (emphasis added)).  According to Bramson and Dooley's allegations, Summer had no such legitimate basis to bring the lawsuit:  "Summer's actions in filing this Complaint and serving summons upon Bramson and Dooley were taken for an improper and illegitimate reason unrelated to the purported relief claimed in the Complaint and without reasonable belief in the truth of the allegations contained in the Complaint." (Counterclaim ¶ 125, ECF No. 42 (emphasis added).)  Bramson and Dooley cannot have it both ways; they cannot both contend that the lawsuit is utterly baseless — which they must to support their tortious interference claim — and that it was also an abuse of process.[3]  Accordingly, the Court dismisses Bramson and Dooley's counterclaim for abuse of process.

IV.  Conclusion

For the foregoing reasons, Price's Motion is DENIED and Summer's Motion is GRANTED IN PART and DENIED IN PART; specifically, Summer's Motion is GRANTED with respect to Bramson and Dooley's counterclaim for abuse of process, which is hereby

---

[3] Bramson and Dooley's allegations could support a malicious prosecution claim, but, as Summer notes, this may not be brought until there is a favorable conclusion in the underlying litigation. Toste Farm Corp. v. Hadbury, Inc., 798 A.2d 901, 907 (R.I. 2002).

DISMISSED   WITH   PREJUDICE,   and   DENIED   with   respect   to   the

counterclaims   for   tortious   interference   and   violations   of

Massachusetts Chapter 93A.


IT IS SO ORDERED.

_____
William E. Smith
Chief Judge
Date:  February 10, 2016

14